IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ERIKA JACOBS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:23-cv-00126 |
| | ) | |
| v. | ) | Hon. Robert S. Ballou |
| | ) | United States District Judge |
| QUEST DIAGNOSTICS INCORPORATED, | ) ) | |
| | ) | |
| Defendant(s). | ) | |

## MEMORANDUM OPINION

Plaintiff Erika Jacobs, proceeding *pro se*, filed this action against her former employer, Quest Diagnostics Incorporated ("Quest"), alleging that she was fired because of her race in violation of Title VII of the Civil Rights Act of 1964. Quest filed a motion to dismiss and to compel arbitration, claiming that at the outset of her employment Jacobs signed an arbitration agreement with Quest that governs the subject matter of this action. Dkt. 28. Jacobs filed both a response in opposition, Dkt. 36, and a motion to object to dismissal, Dkt. 39, which I construe as a supplemental response in opposition to Quest's motion. The parties argued the motion on August 15, 2023. I **GRANT** Quest's motion because the arbitration agreement governs the issues in this action.

**I.    Background**

I accept the following facts as true for the purpose of the motion to dismiss and draw all reasonable inferences in favor of Jacobs.[1] See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Jacobs

---

[1] Jacobs filed this action *pro se* and therefore is entitled to a liberal construction of her pleadings, see Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and I have done so here despite Jacobs having frequently filed *pro se* actions in federal courts around the country. See Dkt. 38 at 3 n.3.

worked for Quest as a medical technologist for approximately six months before she lost her job in November 2021. Dkt. 2 at 5. Jacobs claims that several Quest employees, including the lab manager, night shift supervisor, and human resources supervisor, harassed her at work based on her race. Id. These employees used racial slurs and "falsified write ups [and] demotions." Id. at 7. Jacobs reported this abuse to her managers and the compliance team. Id. at 4. Jacobs alleges that Quest discharged her on November 29, 2021, without explanation, but claims that, in fact, she was discharged because she told her supervisors about the racial discrimination she experienced.

Jacobs filed suit in February 2023. After this court ordered the United States Marshals to effect proper service of the Complaint, Quest filed a motion to dismiss and to compel arbitration contending that as part of its onboarding process for new employees, Jacobs signed an agreement to arbitrate any claims against Quest and that the agreement governs the dispute in this case. Dkts. 25 and 28. The arbitration agreement states in pertinent part:

> "Any and all claims, disputes, or controversies of any kind arising out of or relating to my employment, the termination thereof, my hiring, or any other association I have with the Company (as defined below) shall be settled by final binding arbitration... This Agreement is governed by the Federal Arbitration Act."

Dkt. 21-2 at 1.[2] The agreement to arbitrate extends to disputes involving "claims of discrimination, harassment, retaliation, and wrongful discharge . . . including, but not limited to, [claims under] Title VII of the Civil Rights Act of 1964." Id.

Michael Madden, the "HRSC Operations Manager" for Quest, submitted a declaration explaining that each applicant for a job at Quest must "create a personal and private account, with their own unique login credentials," and provide personally identifying information to

---

[2] Quest relies upon the exhibits attached to its first motion to dismiss (Dkt. 21) in support of its current motion to dismiss and to compel arbitration.

create the account. Id. ¶ 3. If an applicant receives a job offer, the applicant must then use that personal account to "access, review, and sign Quest's standard new-hire paperwork, including the standalone arbitration agreement." Id. ¶ 4. This process requires that new employees "review the Arbitration Agreement, and then click a button for electronic signature or a signature tab." Id. ¶ 5. Quest then receives confirmation that the new employee electronically signed the agreement. Id. ¶ 6. The exhibits to Madden's declaration include (1) a screenshot of Quest business records showing that Jacobs "completed" her onboarding documents, including the arbitration agreement, and (2) the electronically signed arbitration agreement. Dkt. 21-2 at 4.[3]

The arbitration agreement contains a provision allowing an employee to opt-out of the agreement by submitting an Arbitration Opt-Out Form withing 30 days of signing the agreement. Id. Jacobs did not opt out of the arbitration agreement.

## II.      Analysis

The Federal Arbitration Act establishes a presumption of validity for arbitration agreements, the overarching federal policy regarding arbitration, and the procedural guidelines for litigating arbitration disputes. 9 U.S.C. §§ 1–402. "Under the FAA, a written agreement to submit to arbitration 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Smith v. Ironworks Dev. LLC, No. 3:22-cv-20, 2022 WL 9446645, at 3 (W.D. Va. Oct. 14, 2022) (quoting 9 U.S.C. § 2). "Congress enacted the Federal Arbitration Agreement . . . to curb 'widespread judicial hostility to arbitration agreements.'" Ashford v. PricewaterhouseCoopers LLP, 954 F.3d 678, 682 (4th Cir.

---

[3] Jacobs' signature does not appear on page three of the agreement, where Quest's representative signed. Dkt. 21-2 at 3. However, Jacobs' e-signature as of May 13, 2021, at 6:06 P.M. EDT appears on the next page. Id. at 4. Madden explains in his declaration that the name and timestamp on this page constitute her electronic signature. Dkt. 21 ¶ 8.

2020) (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)). The FAA "applies with equal force to employment agreements providing for the arbitration of discrimination claims brought under Title VII of the Civil Rights Act." Ashford, 954 F.3d at 683 (citing Murray v. United Food and Com. Workers Int'l Union, 289 F.3d 297, 301 (4th Cir. 2002)). While the FAA "instructs courts to stay the action for 'any issue referable to arbitration,'" Smith, 2022 WL 9446645, at *4 (quoting 9 U.S.C. § 3), "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."[4] Choice Hotels Intern. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709–10 (4th Cir. 2001). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp. 460 U.S. 1, 24–25 (1983).

A federal court presented with a motion to compel arbitration under a written agreement "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. However, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." Id. "In other words, if the district court finds unresolved questions of material fact on the issue of contract

---

[4] Judge Biggs in the Middle District of North Carolina recently addressed the question of whether a dispute headed for arbitration should be stayed or dismissed. N.C. Mut. Life Ins. Co. v. Fickes, No. 1:22-cv-501, slip op. at 2 (M.D.N.C. Aug. 10, 2023). Noting that "the law remains unsettled," the Court there dismissed the action. Judge Biggs thoroughly discussed Fourth Circuit precedent on the issue and concluded that while "[t]here remains no binding Fourth Circuit precedent directly on point, [] many district courts in the Fourth Circuit maintain that a court can dismiss an action under some circumstances." Id. at 3 n.1 (citing Soucie v. Va. Util. Prot. Serv., Inc., No. 22-cv-552, 2023 WL 2991487, at *10 (W.D. Va. Apr. 18, 2023)). Judge Biggs and Judge Cullen of this court both concluded that the "shall stay" command of 9 U.S.C. § 3 applies only to situations where fewer than all counts in an action are subject to arbitration. Id.

formation, it must move promptly to trial on that issue." Soucie, 2023 WL 2991487, at *4. Thus, in resolving a motion to compel arbitration, the court "applies the familiar summary judgment standard" and "is obliged to consider appropriate materials outside the pleadings" to determine whether the arbitration agreement satisfies § 4. Id.

Federal Rule of Civil Procedure 56 requires that the court "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the movant properly makes and supports a motion for summary judgment, the opposing party must show that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). However, the nonmoving party cannot defeat a properly supported motion with mere conjecture and speculation. See Glover v. Oppleman, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001). On the contrary, the court has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves–Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Celotex, 477 U.S. at 317). In the arbitration context, the party opposing the motion to compel arbitration "must show genuine issues of material fact regarding the existence of an agreement to arbitrate." Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 564 (4th Cir. 2015).

In the Fourth Circuit, a party may compel arbitration if four elements are met. Adkins v. Labor Ready, Inc., 303 F.3d 496, 500–01 (4th Cir. 2002). Adkins requires (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of the plaintiff to arbitrate the dispute. Id.

Quest satisfies each of these requirements. That a dispute exists between the parties is evidenced by this lawsuit. The written arbitration agreement, which Jacobs signed electronically when she began working for Quest, governs this dispute because the agreement explicitly states that it covers Title VII claims. Quest correctly notes that its arbitration agreement with Jacobs implicates interstate commerce because Quest is an out-of-state corporation with a nationwide presence. And Jacobs' multiple filings in opposition to Quest's motion indicate her refusal to arbitrate.

To be clear, Jacobs asserted in a filing related to an earlier motion to dismiss that she did not sign the arbitration agreement. Dkt. 29 at 3. She also stated during oral argument that she did not sign the arbitration agreement. But she does not present any evidence to contradict that she electronically signed the agreement beyond her self-serving statement that she did not do so. Dkt. 21-2 at 4. In Soucie, a former employee alleged discrimination on the part of her employer, which moved to compel arbitration pursuant to a signed arbitration agreement. Soucie, 2023 WL 2991487, at *1. The employee claimed that she did not sign the agreement and that she did not even "remember having ever seen or acknowledged the Agreement." Id. at *2. The Court declined to follow this argument, stating that the employee had "not offer[ed] any competent evidence to refute the digital forensic evidence that she" signed the agreement. Id. at 5.

As the Court noted in Soucie, "a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; instead, the party must identify specific evidence demonstrating a material factual dispute." Id. (quoting S. Elec. Servs. Inc. v. Cornerstone Dets. Prods, Inc., No. 7:10-CV-76, 2010 WL 2233664, at *3 (W.D. Va. June 3, 2010)). Jacobs does not offer specific evidence to refute that she electronically signed the

6

arbitration agreement. Thus, I find that the arbitration agreement is a valid and binding agreement and that it governs this dispute.[5]

### III. Conclusion

For the reasons stated above, I **GRANT** Quest's motion and dismiss this action without prejudice and compel Jacobs to bring her claims against Quest through arbitration proceedings in accordance with the agreement with Quest. An appropriate order shall issue.

Entered: August 16, 2023

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

---

[5] Jacobs objects to the motion to compel arbitration on the grounds that she received a right-to-sue letter in response to her claim of discrimination filed with the Equal Opportunity Employment Commission ("EEOC"). Indeed, this letter demonstrates that Jacobs has exhausted her administrative remedies as required before filing this suit. See Veliaminov v. P.S. Bus. Parks, 857 F. Supp. 2d 589, 593 (E.D. Va. 2012). The right to sue letter, however, operates only as a prerequisite to file this suit in federal court. It is not a defense to the motion to compel arbitration.